No. 21-6992

In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

NATHANIEL POWELL, a/k/a Nate,

*Appellant.*

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 2:16-cr-97

———————————

**REDACTED OPENING BRIEF OF APPELLANT NATHANIEL POWELL**

———————————

Erin B. Ashwell
Morgan V. Maloney
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4748
eashwell@mcguirewoods.com
mmaloney@mcguirewoods.com

*Counsel for Appellant Nathaniel Powell*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE ...............................................................2

SUMMARY OF THE ARGUMENT.......................................................8

STANDARD OF REVIEW ....................................................................9

ARGUMENT...........................................................................................9

I.   Counsel's performance was not objectively reasonable. ...................10

   A.   Mr. Woodward failed to effectively represent Mr.
     Powell as to the maintenance prong of the analysis. ................11

   B.   Mr. Woodward failed to effectively represent Mr.
     Powell as to the use prong of the analysis...................................14

   C.   Mr. Woodward's errors were not strategic choices. .................16

II.  Counsel's deficient performance prejudiced Mr. Powell. ..................18

   A.   There is a reasonable probability that, but-for
     counsel's ineffective assistance, the Court would
     have sustained the objection.........................................................19

   B.   There is a reasonable probability that, but-for
     counsel's ineffective assistance, Mr. Powell would
     have received a lower sentence. ...................................................22

CONCLUSION ......................................................................................24

STATEMENT REGARDING ORAL ARGUMENT........................................24

CERTIFICATE OF COMPLIANCE ....................................................26

CERTIFICATE OF SERVICE .............................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*McMann v. Richardson*,
  397 U.S. 759 (1970)........................................................................9

*Molina-Martinez v. United States*,
  578 U.S. 189 (2016)....................................................................19, 22

*Rosales-Mireles v. United States*,
  138 S. Ct. 1897 (2018)................................................................18, 22

*Strickland v. Washington*,
  466 U.S. 668 (1984)..........................................9, 10, 14, 16, 19

*United States v. Carthorne*,
  878 F.3d 458 (4th Cir. 2017).........................................................3, 10

*United States v. Christian*,
  544 F. App'x 188 (4th Cir. 2013)..............................................13, 14

*United States v. Clark*,
  665 F. App'x 298 (4th Cir. 2016)..............................................13, 20

*United States v. Freeman*,
  24 F.4th 320 (4th Cir. 2022).......................9, 13, 17, 19, 22, 23

*United States v. Palacios*,
  982 F.3d 920 (4th Cir. 2020)........................................................9

**Constitutional Provisions**

U.S. Const. amend. VI..........................................................................9

**Statutes**

28 U.S.C. § 2253....................................................................................2

28 U.S.C. § 2255..............................................................................1, 2, 5

U.S.S.G. Ch. 5, Part A........................................................................18, 21

U.S.S.G. § 2D1.1(b)(12)....................................................................4, 10

U.S.S.G. § 2D1.1 cmt. 17..........................................................11, 14, 21

**Other Authorities**

United States Sentencing Commission, *Guidelines Manual* (Nov. 2016) .........3

## INTRODUCTION

This is a case about the constitutional right to counsel at sentencing. Nathaniel Powell committed a crime; he sold drugs. He does not dispute that. He does not dispute that he owes a debt to society and that a period of incarceration is proper. But, due to the constitutionally ineffective assistance of his sentencing counsel, Mr. Powell is serving a longer sentence than he should. Mr. Powell's sentence should be vacated and he should be re-sentenced with the assistance of effective counsel.

At Mr. Powell's sentencing before the Eastern District of Virginia, his sentencing counsel, Lawrence H. Woodward, failed to adequately investigate and present evidence in support of Mr. Powell's objection to a 2-point Guidelines sentencing enhancement for maintaining a premises for the purpose of distributing narcotics. As a result, the District Court denied Mr. Powell's objection to the Presentence Report ("PSR") and relied on an erroneous Guidelines-range to sentence him. Now, exercising his rights under 28 U.S.C. § 2255, Mr. Powell is challenging his sentence for ineffective

assistance of counsel.[1]

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 2253, this Court has appellate jurisdiction over a final order in a proceeding under 28 U.S.C. § 2255. On October 5, 2023, this Court issued a certificate of appealability. JA381-382 (4th Cir. Doc. 17).

## STATEMENT OF ISSUES

This Court granted a certificate of appealability on the following issue: "whether Powell's trial counsel rendered ineffective assistance by failing to present a lease agreement and witness testimony to rebut the Government's assertion that Powell maintained a residence on Gateway Drive in Portsmouth, Virginia, for the distribution of controlled substances." JA381-382 (4th Cir. Doc. 17).

## STATEMENT OF THE CASE

On October 20, 2016, Nathaniel Powell pled guilty in the Eastern District of Virginia to one count of Conspiracy to Manufacture, Distribute,

---

[1] This provision states "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States… may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

and Possess with Intent to Distribute more than 100 grams of Heroin, in

violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841

(b)(1)(B). JA30.

Following his guilty plea, the Probation Office completed a

Presentence Report. The PSR calculated an Offense Level of 37 and a

Criminal History Category of VI. JA119. This corresponded to a Guidelines-

range of 360 months to life, but was restricted by the statutory maximum to

480 months. JA119.[2] The statutory provisions allowed for a sentencing range

between 60 to 480 months. JA119.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

---

[2] As Mr. Powell was sentenced in 2017, the 2016 United States Guidelines Manual was in effect. All references and citations to U.S.S.G. are to the 2016 version of the manual. United States Sentencing Commission, *Guidelines Manual* (Nov. 2016); *see also United States v. Carthorne*, 878 F.3d 458, 462 n.2 (4th Cir. 2017) (considering the Guidelines manual in effect at the time of sentencing).

3

Mr. Woodward prepared Mr. Powell's position on sentencing and represented him at the March 31, 2017 Sentencing Hearing. JA68. In his papers and at argument, Mr. Powell entered multiple objections to the PSR, only one of which is pertinent here—Mr. Powell's objection to the 2-point enhancement for maintaining a drug premises pursuant to U.S.S.G. § 2D1.1(b)(12). JA47; JA118-119. This provision states: "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels." U.S.S.G. § 2D1.1(b)(12).

The Government's sole evidence in support of the enhancement was the testimony of Task Force Agent Robert Dyer. JA75. Agent Dyer testified that Ms. Wilson, another member of the conspiracy and a drug addict, told him that "her [drug] purchases came from an address on Gateway Drive in Portsmouth, in an apartment complex." JA83, JA90, JA104. Agent Dryer stated that Ms. Wilson told him that she had purchased heroin from Mr. Powell since 2011 and had been to the apartment on approximately 12 occasions between 2011 and 2016. JA103. Mr. Woodward and Agent Dryer engaged in the following exchange on cross-examination:

> Q. And you did verify that he [Mr. Powell] lived or had an apartment on Gateway Drive in the Churchland section of

Portsmouth, but you've certainly not ever been in there and seen
any drug-processing equipment.
A. No, sir.
Q. Okay. So all of that is based on this one statement of Ms.
Wilson – -
A. Yes, sir.

JA104-105.

At sentencing, Mr. Woodward called no witnesses and entered no
evidence. JA108. His sole argument against the drug premise enhancement
was "It's Ms. Wilson, and it's all based on her statement." JA119. The Court
overruled the objection and adopted the PSR's Guidelines-range of 360 to
480 months. JA119. The Court sentenced Mr. Powell to a period of
incarceration of 300 months. JA165.

On April 2, 2018, Mr. Powell filed a Motion to Vacate, Set Aside, or
Correct Sentence under 28 U.S.C. § 2255, raising multiple claims of
ineffective assistance of counsel. JA170-193. The District Court summarily
dismissed several of Mr. Powell's claims but ordered an evidentiary hearing
on two: (1) whether Mr. Woodward failed to file a Notice of Appeal as
instructed by Mr. Powell; and (2) whether Mr. Woodward failed to
"investigate potentially exculpatory evidence pertaining to a two-point
Guidelines enhancement," including a lease which showed that Mr. Powell

did not lease the Gateway Drive apartment used for the "premise" enhancement. JA253. This appeal only concerns the later claim.

The habeas evidentiary hearing took place on June 8, 2021. JA289. One of Mr. Powell's witnesses, his ex-girlfriend Dwanesa Brown, failed to appear. JA294, JA296-297. However, the Government and Mr. Powell reached a Joint Stipulation that, had Ms. Brown testified, she would have testified as follows:

> 1. That she was, until recently, the girlfriend of Mr. Powell.
> 2. In 2016, she leased the apartment on Gateway Drive which is reflected in the lease filed on the docket as Document 186-1 (the "Lease").
> 3. The Lease was not a renewal of a prior term.
> 4. She spoke to Mr. Woodward about the Lease.
> 5. She faxed it to Mr. Woodward's office prior to sentencing.

JA360. The Lease began on January 15, 2016, only a few months before Mr. Powell's arrest on May 27, 2016. JA352; *see also* JA246-247.

Mr. Powell testified on his own behalf. Under oath, he testified that he instructed Mr. Woodward to obtain a copy of the Gateway Drive Lease and told him that Ms. Brown would provide a copy. JA335-337. Mr. Powell testified that he again asked Mr. Woodward if he had a copy of the Lease at the sentencing hearing. JA343. Mr. Powell called no other witnesses.

At the hearing, the Government's sole witness was Mr. Woodward. Mr. Woodward testified that, to his memory, he never received the Lease from Ms. Brown, and it was not in his file. JA311-312. But, he readily admitted he "would never say under oath that a piece of paperwork couldn't get lost" in his office. JA312. As for investigating the premise enhancement, Mr. Woodward stated that his investigation consisted of "consulting with [Mr. Powell], filing the objection, and preparing to examine the agent." JA317. He "didn't do anything to investigate the lease" nor did he determine whether Mr. Powell owned or rented the apartment in question. JA317. He also admitted that "I don't know as I sit here today what Mr. Powell's access was to that premises or any other premises, frankly." JA318. He further stated that, "[i]n the scope of a case like this, you know, two points was not going to be the make or break." JA316.

The District Court found for the Government on both ineffective assistance claims. As to the premise enhancement, the District Court found that Mr. Woodward did not deficiently perform by failing to look for the Lease because he "took other steps in his representation," including advancing arguments and cross-examining Agent Dryer. JA374. The Court further found that Mr. Powell failed to establish prejudice because he did

not show "that the Court would have sustained his objection and granted him a more lenient sentence if the lease were produced." JA375. It concluded that "[e]ven if this objection had been sustained, Mr. Powell's sentence likely would have been the same." JA375.

This appeal follows.

## SUMMARY OF THE ARGUMENT

I.    Mr. Woodward's performance regarding the 2-point sentencing enhancement for maintaining a premises used for drug dealing was not objectively reasonable. Mr. Woodward failed to identify the lease governing the premise in question (the Gateway Drive apartment) and to conduct any investigation into Mr. Powell's degree of control over the apartment. He also failed to adequately cross-examine the Government's witness at sentencing to demonstrate that Mr. Powell did not use the apartment for the purpose of distributing narcotics. None of these failures constitute strategic choices.

II.    Mr. Woodward's defective performance prejudiced Mr. Powell. There is a reasonable probability that, if Mr. Woodward had effectively assisted Mr. Powell, the District Court would have sustained Mr. Powell's objection to the 2-point sentencing enhancement. And, as Mr. Powell was sentenced under an incorrect Guidelines-range, there is a reasonable

8

probability that his sentence would be different but-for Mr. Woodward's defective performance. *See United States v. Freeman*, 24 F.4th 320, 331–32 (4th Cir. 2022) (en banc).

## STANDARD OF REVIEW

This Court reviews a district court's denial of relief on a § 2255 motion de novo. *United States v. Palacios,* 982 F.3d 920, 923 (4th Cir. 2020).

## ARGUMENT

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). This right extends to criminal defendants "at all critical stages of a criminal proceeding, including at sentencing." *Freeman*, 24 F.4th at 326.

To prove ineffective assistance of counsel, (1) "the defendant must show that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687; *see also Freeman*, 24 F.4th at 335. This standard applies in full force in habeas proceedings. *Strickland,* 466 U.S. at 697–98 ("Since fundamental fairness is

the central concern of the writ of habeas corpus…no special standards ought to apply to ineffectiveness claims made in habeas proceedings").

## I.    Counsel's performance was not objectively reasonable.

As the Supreme Court explained, "the proper standard for attorney performance is that of reasonably effective assistance" and is measured "under prevailing professional norms." *Strickland*, 466 U.S. at 687–88. Counsel has a "duty to investigate and to research a client's case in a manner sufficient to support informed legal judgments." *Carthorne*, 878 F.3d at 466. Mr. Woodward failed to reasonably investigate the basis of the drug premises enhancement, including by failing to investigate the existence or length of a lease and to conduct a factual investigation into the scope of Mr. Powell's control over and use of the apartment.

The premise enhancement applies "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The analysis requires the Government to prove two things: (1) the defendant "maintained" the premise; and (2) the premise was used for drug activities.

10

### A.    Mr. Woodward failed to effectively represent Mr. Powell as to the maintenance prong of the analysis.

When considering whether a defendant "maintained" the premises, the Guidelines instruct courts to consider "(A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. 17. By not investigating the existence of a lease or Mr. Powell's control over the apartment, Mr. Woodward failed to effectively represent Mr. Powell as to the maintenance prong.

*First,* a reasonably diligent attorney would have investigated the status of the Gateway apartment lease. This is true regardless of whose testimony—Mr. Powell's, Ms. Brown's, or Mr. Woodward's — that the Court credits. Mr. Powell stated that he asked Mr. Woodward to obtain the Lease "to prove that the owner started renting in 2016." JA249. And Ms. Brown would have testified that she spoke to Mr. Woodward about the Lease and faxed it to his office. JA360. Mr. Woodward, on the other hand, stated that he never received the Lease nor knew of its existence, either because (1) Ms. Brown improperly or never sent it; or (2) it got lost in Mr. Woodward's office.

11

JA317; *see also* JA312 (testimony of Mr. Woodward: "I would never say under oath that a piece of paperwork couldn't get lost [in my office]").

Whether he received the Lease from Ms. Brown or not, Mr. Woodward still should have known about or investigated its existence. When reviewing the PSR with Mr. Powell, Mr. Woodward admitted that "[Mr. Powell] indicated to me that that wasn't true, or he didn't use that apartment, or Ms. Wilson was lying. And I don't, you know, remember the exact details of that." JA316. Regardless of his exact language, Mr. Powell informed Mr. Woodward that he did not control the apartment. ████████

████████████████████████████████████████

████████████████████████

Yet, Mr. Woodward conducted no additional investigation. He admitted that the extent of his "investigation was consulting with my client, filing the objection, and preparing to examine the agent." JA317. He "didn't do anything to investigate the lease." JA317. And he admitted, "I don't know as I sit here today what Mr. Powell's access was to that premises or any other premises, frankly." JA318.

Even a "cursory" investigation into the Gateway Drive apartment would have revealed the fact that Ms. Brown, not Mr. Powell, rented it, a key

part of the maintenance analysis. *See Freeman*, 24 F.4th at 330. Further, it would have revealed that Ms. Brown's lease began only a few months prior to Mr. Powell's arrest, not five years before as Ms. Wilson stated.

*Second,* reasonably diligent counsel would have conducted a further factual investigation into Mr. Powell's degree of control over the apartment. It is true that a defendant can still be found to maintain a premises even if he did not own or lease the premises. *United States v. Clark*, 665 F. App'x 298, 302–03 (4th Cir. 2016) (unpublished). But, to do so, the Government must demonstrate that the defendant "exercised control" over the premises. *Id.* This is a fact-intensive inquiry. Courts consider, among other factors, whether the defendant possessed a key, paid bills, came and went at will, and slept at the premises. *Id.*; *see also United States v. Christian,* 544 F. App'x 188, 191 (4th Cir. 2013) (unpublished).

For example, in *Christian*, the Fourth Circuit upheld the application of the drug premise enhancement where, like Mr. Powell, the defendant did not own or lease the apartment. 544 F. App'x at 190–91. But, at the *Christian* sentencing, the Government provided a wealth of additional evidence as to the defendant's level of "control." The Government demonstrated that the defendant had a key to the apartment; he stayed there regularly; and he

"controlled" a chest and safe on the premise containing money, drugs, and firearms. *Id.* at 191. No evidence of this type was entered at Mr. Powell's hearing.

Even if Mr. Woodward did not get the Lease from Ms. Brown, a reasonably diligent counsel, once his client had raised a factual objection, would have proactively looked for a lease to the premise and investigated the factual basis of the premise enhancement. *See also Strickland*, 466 U.S. at 691 (when evaluating the reasonableness of counsel's investigation, "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions").

**B.**     **Mr. Woodward failed to effectively represent Mr. Powell as to the use prong of the analysis.**

In determining if a premises was used for drug activity, the Court "must" find that "[m]anufacturing or distributing a controlled substance…[was] one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses." U.S.S.G. § 2D1.1 cmt. 17. "In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently

14

the premises was used by the defendant for lawful purposes." *Id.* Mr. Woodward failed to adequately investigate and argue this prong.

*First,* a reasonably diligent attorney would have investigated the use of the apartment. ██████████████████████████████



████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████ A reasonably diligent attorney would have investigated and argued that point at sentencing.

*Second,* the Lease would have contradicted Ms. Wilson's testimony about the "use" of the premises. At sentencing, the Government argued that Ms. Wilson's statements were reliable because "she says she's going to the same place 12 different, you know, times over the course of the conspiracy, so this goes back years. She specifies the street name, the neighborhood, and a residence that never changed." JA118-119. The Lease directly undermines

Ms. Wilson's statement, calling this statement and others into question. The Lease actually began in January 2016, only five months (not five years) before Mr. Powell's arrest. JA246-247; JA44 (Statement of Facts ¶ 4). Ms. Brown would have testified that it was not a renewal. JA360. Therefore, Mr. Powell's "control" over and "use" of the premise could not have gone "back years" as Ms. Wilson stated. If the Lease had been entered into evidence, it would have directly contradicted Ms. Wilson's uncorroborated hearsay testimony.

### C. Mr. Woodward's errors were not strategic choices.

It cannot be said that Mr. Woodward's failure to investigate or argue these points was a "strategic choice." *Strickland*, 466 U.S. at 681 (deferring to counsel's reasonable strategic decisions). Mr. Woodward *did* raise the objection at sentencing. He just failed to do the homework to support his objection.

It could be that, after interviewing Ms. Brown, Mr. Woodward would have made a strategic decision not to have her testify at sentencing regarding the premise enhancement. But Mr. Woodward does not "recall" if he ever even spoke to Ms. Brown, strongly indicating that he never interviewed her as a potential witness much less made a "strategic" decision not to have her

testify. JA320-321. It could also be that, for whatever reason, he might have made a strategic decision not to introduce the Lease. But he could not have made any strategic decision if he never investigated or knew of its existence. JA318. Mr. Woodward's failures cannot be attributed to any strategic planning.

Instead, Mr. Woodward stated that he did not think the existence of a lease was important to the premise analysis. Despite the clear language in the Guidelines, *Clark,* and *Christian* (all of which were available to Mr. Woodward at the time of sentencing), he wrongly asserted "it's not really legally pertinent who owns or rents" the premise. JA317. [3] But, as demonstrated above, it is one of the *most* legally pertinent questions to determine if the defendant maintained the premise. "[A]ny reasonably competent attorney would not have made the same mistake." *Freeman*, 24 F.4th at 330.

---

[3] It is not clear to what extent Mr. Woodward did *any* legal research on this question. He cited no case law in his written pleadings or at the sentencing hearing.

17

Finally, Mr. Woodward admitted that he did not investigate the enhancement because he believed "[i]n the scope of a case like this, you know, two points was not going to be the make or break." JA316.

In actuality, the two-points would have moved the top Guidelines-range sentence (accounting for the statutory maximum) from 480 months to 365 months—a difference of over nine and a half years—and the bottom sentence from 360 months to 292 months—a difference of over five and half years. U.S.S.G. Ch. 5, Part A. A reasonably competent attorney would never disregard the importance of any offense level enhancement, much less when operating at the top of the Sentencing Table where the difference of a few points can be a matter of years. *See also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) ("To a prisoner, this prospect of additional time behind bars is not some theoretical or mathematical concept" and "any amount of actual jail time is significant") (cleaned up). Mr. Woodward failed to provide effective assistance to Mr. Powell at sentencing.

## II.   Counsel's deficient performance prejudiced Mr. Powell.

Mr. Woodward's deficient performance prejudiced Mr. Powell. "To show prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result in the

proceeding would have been different.'" *Freeman*, 24 F.4th at 331 (quoting *Strickland*, 466 U.S. at 694) (cleaned up). To meet the "reasonable probability standard," a defendant only needs to demonstrate "a probability sufficient to undermine confidence in the outcome [of the proceeding]." *Id.* (quoting *Strickland*, 466 U.S. at 694); *see also Strickland*, 466 U.S. at 693 ("[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case"). "[I]n most cases, when a district court adopts an incorrect Guidelines range, there is a reasonable probability that the defendant's sentence would be different absent the error." *Freeman*, 24 F.4th at 331–32 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 192 (2016)).

### A. There is a reasonable probability that, but-for counsel's ineffective assistance, the Court would have sustained the objection.

When a conclusion is "only weakly supported by the record," like it is here, that conclusion "is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696. There is a reasonable probability that, if not for counsel's deficient investigation and performance at sentencing, the Court would have upheld Mr. Powell's objection and re-calculated the Guidelines-range.

19

The evidence presented at sentencing regarding the enhancement was slim and the introduction of the Lease or any additional piece of evidence by the defense could have tipped the balance in Mr. Powell's favor. At sentencing, the Government *solely* relied on Ms. Wilson's statement, as reported by Agent Dryer. In other words, the Government relied completely on the hearsay statements of a known drug addict and co-conspirator about one incident. To say the least, this is a thin reed to stand on.

Here, the submission of the Lease had a reasonable probability of changing the Court's ruling on the maintenance prong of the premise analysis. *First,* the Lease would have contradicted Ms. Wilson's otherwise unchallenged testimony regarding the length of Mr. Powell's connection to the residence. *Second,* the Lease would have proved that Mr. Powell neither owned nor leased the premises, "the typical examples of a possessory interest," and would have required the Government to present additional evidence regarding control to meet its evidentiary burden. *Clark*, 665 F. App'x at 302–03.

And, but-for Mr. Woodward's deficient performance, there is a reasonable probability that the Court would have ruled in Mr. Powell's favor as to the "use" prong. One of the key considerations for this analysis is "how

frequently the premises was used" for drug activity. U.S.S.G. § 2D1.1 cmt.

17. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ But Mr. Woodward failed to press this point at argument

and in his papers.

In addition, it is simply unknown—since Mr. Woodward, by his own

admission, never investigated it—what other information, evidence, and

testimony regarding control and use would have come to light. If the Court

found for Mr. Powell on either prong (maintenance or use), it would have

sustained Mr. Powell's objection to the premise enhancement.

If the objection had been sustained, Mr. Powell would have an offense

level of 35 and a Criminal History Category of VI. This would result in a

Guidelines-range of 292 to 365 months (rather than the range of 360 months

to 480 months as the District Court wrongly calculated). U.S.S.G., Ch. 5, Part

A (Sentencing Table). Mr. Powell is currently serving a sentence of 300

months.

**B.    There is a reasonable probability that, but-for counsel's ineffective assistance, Mr. Powell would have received a lower sentence.**

As there is a "reasonable probability" that the objection would have been sustained and the Guidelines-range re-calculated, "there is a reasonable probability that the defendant's sentence would be different absent the error." *Freeman*, 24 F.4th at 331–32 (quoting *Molina-Martinez*, 578 U.S. at 192). In 2022, the Fourth Circuit sitting en banc reaffirmed:

> [w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.

*Id.* at 332 (quoting *Molina-Martinez*, 578 U.S. at 192). "In other words, an error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than 'necessary' to fulfill the purposes of incarceration." *Rosales-Mireles,* 138 S. Ct. at 1907.

In this case, the District Court sentenced Mr. Powell below the incorrectly calculated Guidelines-range (using an offense level of 37) but within the correctly calculated Guidelines-range (using an offense level of 35). This is the exact situation that the Supreme Court considered in *Molina-*

*Martinez* and affirmed that the erroneous calculation was presumptively prejudicial.

Here, there is no indication in the record to overcome the presumption that the incorrectly calculated Guidelines-range prejudiced Mr. Powell. As the Fourth Circuit has made clear, this is a difficult standard to overcome. For example, it has held that the sentencing judge's express statement that he or she would have imposed the same sentence regardless of the Guidelines, is not enough to overcome this presumption. *Freeman*, 24 F.4th at 332.

In its order denying Mr. Powell's motion, the District Court pointed to nothing nearly as compelling. As its sole discussion on prejudice, the District Court stated that "[e]ven if this objection had been sustained, Mr. Powell's sentence likely would have been the same." JA375. But, it failed to cite anything in the record for that proposition other than the fact that his current sentence is within the properly calculated Guidelines-range — the exact type of evidence rejected by both *Freeman* and *Molina-Martinez.* Instead, the District Court discussed the Guideline-range at sentencing and stated that it relied on it "in assessing a sentence." JA158; *see also* JA142-143 (noting that,

if not for the statutory cap, Mr. Powell would be "looking at a life sentence" under the Guidelines).

Because counsel's ineffective assistance caused the District Court to rely on an erroneous Guidelines-range at sentencing, Mr. Powell suffered constitutionally cognizable prejudice.

## CONCLUSION

Mr. Powell has met both elements of the ineffective assistance of counsel test, as articulated in *Strickland*. *First*, his counsel failed to provide reasonably effective assistance when he neither investigated nor entered the Lease into evidence to rebut the Government's assertion that Mr. Powell exercised control over the Gateway apartment for a period of five years. *Second*, this deficient performance resulted in the sentencing court relying on an improperly calculated Guidelines-range, prejudicing Mr. Powell. For these reasons, Mr. Powell respectfully requests that this Court overturn the District Court's ruling and find that Mr. Powell's sentencing counsel provided him ineffective assistance in failing to present a Lease and testimony to object to the premise enhancement at sentencing.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Nathaniel Powell respectfully requests oral argument.

Dated: January 10, 2024                    Respectfully submitted,

                                           */s/ Morgan V. Maloney*
                                           Erin B. Ashwell
                                           Morgan V. Maloney
                                           McGuireWoods LLP
                                           Gateway Plaza
                                           800 East Canal Street
                                           Richmond, VA 23219
                                           T: (804) 775-4748
                                           F: (804) 698-2148
                                           eashwell@mcguirewoods.com
                                           mmaloney@mcguirewoods.com

                                           *Counsel for Appellant Nathaniel Powell*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 4,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Book Antiqua font using Microsoft Word.

*/s/ Morgan V. Maloney*
Morgan V. Maloney

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, the foregoing was filed with

the Clerk of the United States Court of Appeals for the Fourth Circuit using

the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Morgan V. Maloney*
Morgan V. Maloney