IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 21-6992

───────────────

UNITED STATES OF AMERICA,

*Appellee*,

v.

NATHANIEL POWELL,

*Appellant*.

───────────────

Appeal from the United States District Court
for the Eastern District of Virginia
at Norfolk
*The Honorable Arenda W. Allen, District Judge*

───────────────

BRIEF OF THE UNITED STATES

───────────────

Jessica D. Aber
United States Attorney

Vetan Kapoor
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

**Table of Contents**

**Page**

Table of Authorities ...................................................................................... iii

Introduction ....................................................................................................1

Issue Presented ...............................................................................................2

Statement of the Case......................................................................................2

      A.    Powell was a key member of a multi-state heroin and fentanyl
           trafficking operation. ...........................................................................2

      B.    Powell pled guilty, and his counsel, Woodward, objected to the
           application of a drug premises sentence enhancement. .......................4

      C.    The district court overruled the objection and sentenced Powell. ........6

      D.    Powell raised an ineffective assistance claim that the district
           court rejected after an evidentiary hearing. ..........................................8

Summary of Argument ...................................................................................14

Argument.......................................................................................................15

I.     Powell has not shown that Woodward's performance was
      unreasonable. ...........................................................................................16

      A.    Woodward objected to the premises enhancement and
           vigorously challenged Wilson's credibility. ......................................16

      B.    The record shows that further factual investigation was not
           necessary for competent representation. ............................................18

           1.   Investigation of who owned or leased the apartment was not
               necessary. ......................................................................................18

        2.   Further investigation of Powell's use of the apartment was not necessary. ...............................................................21

    C.   Omitting arguments that are unlikely to succeed cannot constitute deficient performance. .......................................23

II.   Powell has not shown that he was prejudiced by Woodward's performance. ..................................................................27

    A.   The district court would have applied the enhancement even with evidence of Brown's lease and testimony..................28

    B.   The district court confirmed that Powell's sentence likely would have been the same.................................................30

Conclusion .................................................................................34

Statement Regarding Oral Argument ....................................35

Certificate of Compliance .........................................................35

**Table of Authorities**

**Page**

**Cases**

*Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991)................................................18

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) ......................................................17

*Lafler v. Cooper*, 566 U.S. 156 (2012) ................................................................15

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ................................. 32, 33

*Shinseki v. Sanders*, 556 U.S. 396 (2009)............................................................33

*Springer v. Collins*, 586 F.2d 329 (4th Cir. 1978)................................................17

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................. 15, 16, 17, 27

*United States v. Baker*, 719 F.3d 313 (4th Cir. 2013) ..........................................29

*United States v. Barnett*, 48 F.4th 216 (4th Cir. 2022).........................................29

*United States v. Carbajal*, 717 F. App'x 234 (4th Cir. 2018) ........................ 26, 29

*United States v. Carter*, 834 F.3d 259 (3d Cir. 2016) ..........................................24

*United States v. Carthorne*, 878 F.3d 458 (4th Cir. 2017) ............................. 18, 23

*United States v. Christian*, 544 F. App'x 188 (4th Cir. 2013).........................24, 26

*United States v. Clark*, 665 F. App'x 298 (4th Cir. 2016).........................19, 24, 26

*United States v. Conner*, 456 F. App'x 300 (4th Cir. 2011)...................................17

*United States v. Fonseca*, 834 F. App'x 75 (5th Cir. 2020) ..................................22

*United States v. Freeman*, 24 F.4th 320 (4th Cir. 2022) ......................... 28, 32, 33

*United States v. Garcia*, 774 F.3d 472 (8th Cir. 2014)..........................................25

*United States v. Green*, 996 F.3d 176 (4th Cir. 2021) ..........................................33

*United States v. Holloman*, 679 F. App'x 256 (4th Cir. 2017)...............................24

*United States v. Jones*, 778 F.3d 375 (1st Cir. 2015) ..................................... 19, 25

*United States v. Lockhart*, 732 F. App'x 842 (11th Cir. 2018) .............................30

*United States v. Lotharp*, 2023 WL 2136373 (4th Cir. Feb. 21, 2023).................29

*United States v. Morris*, 917 F.3d 818 (4th Cir. 2019).................................. 15, 23

*United States v. Nelson*, 37 F.4th 962 (4th Cir. 2022)..........................................32

*United States v. Ragin*, 820 F.3d 609 (4th Cir. 2016) ...............................................15

*United States v. Saxby*, 754 F. App'x 161 (4th Cir. 2018) .....................................22

*United States v. Smith*, 497 F. App'x 269 (4th Cir. 2012).......................................28

*United States v. Stukes*, 774 F. App'x 788 (4th Cir. 2019)............................... 29, 30

*United States v. Tippins*, 630 F. App'x 501 (6th Cir. 2015)....................................25

**Statutes**

18 U.S.C. § 3553(a) ...........................................................................31

28 U.S.C. § 2255 .............................................................................1, 8

**Other Authorities**

U.S.S.G, Ch. 5, Part A ......................................................................31

U.S.S.G. § 2D1.1(b)(12) ................................................................. passim

**Introduction**

Nathaniel Powell was a leading member of a heroin and fentanyl trafficking conspiracy that operated in Maryland, North Carolina, and Virginia. After attempting to elude police officers during a high-speed car chase that resulted in the hospitalization of an innocent civilian, Powell was caught and pled guilty to conspiracy to manufacture, distribute, and possess with intent to distribute heroin.

At sentencing, Powell was capably represented by his lawyer, Lawrence Woodward, who raised multiple objections to the probation office's presentence investigation report ("PSR"). As relevant here, Woodward objected to the application of a sentence enhancement for maintaining a premises to manufacture or distribute narcotics. *See* U.S.S.G. § 2D1.1(b)(12).

Powell believed, and continues to assert, that the enhancement should not have been applied because it was based solely on unreliable statements made by Valerie Wilson, Powell's relative and co-conspirator. Woodward pressed this argument in a manner that the district court described as "zealous[]" and "thorough." JA374. Nonetheless, the court found that Wilson was credible, held that the evidence warranted applying the enhancement, and denied the objection.

Now, through an ineffective assistance of counsel claim under 28 U.S.C. § 2255, Powell invites this Court to re-litigate Wilson's credibility and second-guess Woodward's case strategy. The Court should decline to do so. Woodward's

1

decisions were objectively reasonable and reflected an accurate understanding of

the law.  Moreover, Powell has not shown that he was prejudiced by Woodward's

performance.  The Court should therefore affirm the district court's denial of

Powell's § 2255 motion.

## Issue Presented

This Court granted a certificate of appealability limited to one question:

"[W]hether Powell's trial counsel rendered ineffective assistance by failing to

present a lease agreement and witness testimony to rebut the Government's

assertion that Powell maintained a residence on Gateway Drive in Portsmouth,

Virginia, for the distribution of controlled substances."  JA381-382.

## Statement of the Case

### A.    Powell was a key member of a multi-state heroin and fentanyl trafficking operation.

Nathaniel Powell was a "leading member" of a drug trafficking conspiracy

that operated in Maryland, North Carolina, and Virginia.  JA43.  His role in the

conspiracy "included, but was not limited to, procuring heroin and fentanyl from

sources of supply in Baltimore, Maryland."  JA43.

Between March and May 2016, Powell traveled to Baltimore approximately

ten times to make wholesale purchases of heroin.  JA43-44.  "After each purchase,

he transported the heroin to the Hampton Roads area for resale."  JA44.  Law

enforcement estimated that the conspiracy was responsible for the distribution of approximately twenty kilograms of heroin.  JA80.

Powell also supplied a co-conspirator, Valerie Wilson, with heroin, which Wilson then transported to and sold in North Carolina.  JA43.  Powell and Wilson are related, JA90, and from 2011 to 2016, Wilson "purchased 10 bundles of heroin from Powell on 12 occasions."  JA387; JA86.

Several agencies investigated Powell's drug trafficking, including the Drug Enforcement Administration ("DEA") and the Portsmouth Police Department in Virginia.  JA76-77.  Robert Dyer, a detective with the Portsmouth Police who also served as a DEA task force officer, was the lead case agent.  JA76.

Agent Dyer planned an operation to catch Powell selling heroin to a cooperating witness.  JA91.  On May 26, 2016, the witness called Powell to set up a drug deal.  JA91.  Powell set the location, and a SWAT team was dispatched to make an arrest.  JA91.  As the police pulled up, Powell fled, and a high-speed car chase ensued.  JA91; JA44.  The chase ended when Powell's car crashed into an innocent civilian's, "dislodg[ing] her from the driver's seat" and resulting in injuries that required hospitalization.  JA92; JA122.  From Powell's car, the police recovered marijuana, $3,600 in cash, and seven grams of fentanyl.  JA92, JA44.

Around the time of his arrest, Powell threatened someone he believed to be a police witness against him.  JA44.  Powell used Facebook to warn this person that

he would "risk it all to fix ur ass its no way in hell I'm gone let you set me up and disrespect me so don't find yourself on a t-shirt," adding "I know wea u rest ur head." JA387. Agent Dyer later testified that "to end up on a T-shirt" means "after a death or the loss of a loved one, individuals will post pictures of their T-shirts and 'RIP' in memoriam of that lost individual." JA97.

### B. Powell pled guilty, and his counsel, Woodward, objected to the application of a drug premises sentence enhancement.

On October 20, 2016, Powell pled guilty to conspiracy to manufacture, distribute, and possess with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). JA30. In exchange for the concessions made by the government in the plea agreement, Powell agreed to waive the right to appeal any sentence he received "on any ground whatsoever" other than ineffective assistance of counsel. JA32-33.

Before sentencing, the probation office prepared a PSR. *See* JA383-408. The PSR calculated Powell's total Offense Level as 37 and his Criminal History Category as VI, corresponding to a Guidelines prison sentence of 360 months to life. *See* JA119. However, a statutory maximum restricted the sentence to no more than 480 months. JA119.

The Offense Level was based on an attribution of approximately one kilogram of heroin to Powell and several offense-specific sentence enhancements.

*See* JA46-48; JA388-389.  One enhancement, maintaining a premises to make or

distribute narcotics, is the focus of this appeal.  *See* U.S.S.G. § 2D1.1(b)(12) ("If

the defendant maintained a premises for the purpose of manufacturing or

distributing a controlled substance, increase [the Offense Level] by 2 levels.").

Powell's counsel, Lawrence Woodward, met with Powell "numerous times

to discuss and analyze" the PSR.  JA46.  Woodward then filed a sentencing

position statement on behalf of Powell in March 2017.  JA46.

Powell's statement raised several objections to the PSR.  JA46-48.  It

alleged that the factual bases for the drug weight and premises enhancement came

from a single source—Agent Dyer's debrief of Valerie Wilson.  JA46-48.  It

challenged Wilson's credibility, arguing that she was a "heavy drug user," that her

debrief summary "contain[ed] almost no detail," and, that as a co-conspirator, she

"presumably" had an incentive to "maximize her value to the government."  JA48.

"[T]his single source," Powell's statement argued, "does not" "provide an adequate

basis to increase the Defendant's advisory guideline range by 8 points."  JA48.

The government also filed a sentencing position statement.  *See* JA53-67.

The government noted that Wilson was related to Powell, that Powell "was her

source of supply," and that the two had engaged in a dozen drug transactions since

2011.  JA57-58.  In other words, theirs was not "a onetime association."  JA58.

The government stated that Wilson "visited the defendant's home on Gateway Drive" in Portsmouth "on a dozen occasions since the summer of 2011 to purchase heroin." JA57. On one such occasion, "she observed [Powell] take possession of a kilogram of heroin at his home, which he then proceeded to process for retail distribution." JA57-58. Wilson "overheard Powell cut the wholesale heroin with a blender or coffee grinder." JA58. This showed that Powell used the Gateway Drive property to manufacture or distribute heroin. JA58.

### C.    The district court overruled the objection and sentenced Powell.

The district court held a sentencing hearing in March 2017. JA68. At the hearing, Powell confirmed that, "other than the objections" Woodward raised, "the PSR is an accurate reflection of [his] history and characteristics." JA75.

The government called Agent Dyer to testify. JA75. With respect to the premises enhancement, he stated that, "[d]ebriefing Valerie Wilson, she indicated that her purchases came from an address on Gateway Drive in Portsmouth, in an apartment complex." JA90. Dyer added that he "conducted surveillance on an apartment complex on Gateway Drive in the 3600 block." JA90.

Woodward then cross-examined Dyer. JA100. He asked whether Wilson was "a drug user," and a "junky or a heroin addict." JA104. Dyer confirmed that Wilson had been a drug addict for "[s]everal years." JA104. Woodward then said that while Dyer "did verify that [Powell] lived or had an apartment on Gateway

6

Drive in the Churchland section of Portsmouth," he had "certainly not ever been in there and seen any drug-processing equipment." JA104. Dyer agreed. JA104. Dyer also agreed with Woodward that application of the premises enhancement was "based on this one statement of Ms. Wilson." JA104-105.

Before hearing argument from counsel, the district court reminded Powell that he had "the right to testify regarding the objections," including "the premises enhancement[]." JA108. Powell confirmed that he understood and did not wish to testify. JA109.

The government and Woodward then presented argument about the sentence enhancements. JA109-119. Woodward asserted that "[t]hree of [Powell's] objections all relate to Ms. Wilson's credibility," and that "what the Court has really got to decide is [whether] the vague and unspecific statement of one individual, who we know to be a drug addict and we know to be providing information in the hopes of helping herself, because she was with her lawyer and in custody [is] enough to support all these enhancements." JA111. Acknowledging that the "standard here is preponderance, not proof beyond a reasonable doubt," Woodward argued that the government had failed to meet that standard because "there's not much there-there." JA111. "[P]eople say all kinds of things when they're being debriefed," Woodward added, and Wilson's statements were not "reliable enough to base sentencing enhancements on." JA112. Woodward later

7

said that he was "not going to beat a dead horse," and reiterated that the premises enhancement was "all based on [Wilson]'s statement." JA119.

The district court overruled the objection to the premises enhancement and adopted the factual findings in the PSR. JA119. The court then sentenced Powell below the advisory Guidelines range to 300 months' imprisonment. JA165; JA119. Addressing Wilson's credibility, the court said that Powell was "even willing to throw [his] blood relative under the bus" and that Powell's own statements while on the phone in jail "corroborate[d] what she says about [him]" with respect to a firearm enhancement. JA136; JA86-87.

### D.    Powell raised an ineffective assistance claim that the district court rejected after an evidentiary hearing.

In April 2018, Powell filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. JA170-193. Powell argued that Woodward provided ineffective assistance of counsel for five reasons. *See* JA179-192. In a supplemental motion, Powell added a sixth claim, which addressed the premises enhancement. JA194-200.

In the sixth claim, Powell argued that Woodward "failed to investigate the false testimony that Ms. Wilson gave to Detective Dyer about Petitioner using his Portsmouth residence over a five-year period in which the evidence was wholly insufficient to support the 2-level enhancement for Maintaining A Residence." JA195. Powell argued that "Petitioner leased the residence in 2016" and so

8

Wilson's "declaration about her buying heroin since 2011" from Powell's Portsmouth residence was "false and unreliable."  JA197.

In support of this argument, Powell submitted an exhibit.  JA201.  The exhibit is styled as a "Lease Agreement" between "Westwinds Associates L.L.C." and "Dwanesa Brown."  JA202.  It is dated January 15, 2016, and it states that Brown leased an apartment at 3659 Gateway Drive from January 15, 2016 until January 14, 2017.  JA202.

The district court dismissed four of Powell's six claims, and it ordered an evidentiary hearing to address the remaining two, including the premises enhancement claim.  JA251-258.  The court directed the government to brief its position, ordered that Powell be appointed new counsel, and invited Powell to file a reply.  JA258.

The government argued that Woodward effectively assisted Powell.  JA262-264.  Woodward objected to the premises enhancement in his position paper and again at sentencing, cross-examined Agent Dyer, and specifically challenged Wilson's credibility.  JA262-263.  Additionally, a purported lease in Brown's name, the government argued, did not disprove the evidence showing that Powell used the Gateway Drive apartment to manufacture or distribute drugs.  JA263.

The government also submitted an affidavit from Woodward, dated March 18, 2020.  JA268-269.  In the affidavit, Woodward stated that he "discussed the

9

premises enhancement" with Powell, but "[a]t no time during [his] representation

of Mr. Powell did [he] become aware of the lease."  JA268.  He added that he had

"no memory of being asked" by Powell to get a copy of Brown's lease agreement,

and that his case file "does not indicate[] any such request from Mr. Powell."

JA268.

      Through his new counsel, Adam Carroll, Powell submitted a reply brief and

his own affidavit.  Powell stated that he told Woodward "to get the lease agreement

for the Gateway drive address to prove that the owner started renting in 2016."

JA275.  Powell acknowledged that Woodward's case notes showed that the two

met to discuss "objections to the guidelines," and that the government "sent [the]

debrief of Wilson to supplement [the] gun, drug wt., and drug house"

enhancements.  JA274-275.  Woodward's notes also showed that the two planned

to meet again "to discuss his statements/possible testimony at sentencing."  JA275.

      The district court held an evidentiary hearing in June 2021.  JA289.  Carroll

told the court that Brown was Powell's girlfriend while she was leasing the

Gateway Drive property, and that, for a time, "[s]he was continuing in that

relationship with him despite his incarceration."  JA294.  However, their

"relationship had since deteriorated," and she was no longer willing to testify in

Powell's support.  JA296, JA298.

The government agreed to stipulate to what Powell alleged Brown would have said had she chosen to testify. JA299-300. According to Powell, Brown would have testified that (1) she was Powell's girlfriend, (2) she leased the Gateway Drive apartment in 2016, (3) the lease was not a renewal of a prior term, (4) she told Woodward about the lease, and (5) she faxed the lease to Woodward's office before sentencing. JA360. Because Brown did not appear at the hearing, the government did not have the opportunity to cross-examine her to determine the veracity of these claims. JA299; JA360.

Woodward then testified. JA302-331. In response to the government's questions, he stated that he had practiced law for 39 years, including as a member of the Air Force JAG Corps. JA303. He added that he "started doing almost exclusively criminal work" "probably 20 years ago," and that he had handled about 400 cases in the U.S. District Court for the Eastern District of Virginia and 90 appeals in the Fourth Circuit. JA304.

Woodward affirmed under oath that he "did not" receive the lease before sentencing. JA311. He "turned [his] complete file over" to Carroll and "went through" it, confirming that he "did not get" the lease. JA311-312. Woodward added that he "would never say under oath that a piece of paperwork couldn't get lost," but that he had "had the same fax number and the same system for getting

11

things into [his] files for 30-plus years.  So it was not in [his] file."  JA312.  He

again confirmed: "[M]y file did not contain that lease."  JA312.

Woodward said that he had since been shown the lease, and "[i]f your

question is – and hindsight is 2020 – looking at the lease, do I think it would have

made any difference, the answer to that would be 'No' as well."  JA313.  He

explained that the Gateway Drive apartment was alleged to be "what I would call a

storehouse" and that in his experience, "people will have what they think is a safe

place that's not obvious that they use to keep narcotics in."  JA318.

Woodward also stated that he could not recall if he had spoken to Brown.

JA320-321.  His case notes reflected his understanding "that Ms. Mills was

[Powell's] fiance [sic] and Ms. Brown was his girlfriend."  JA321.

Powell testified on his own behalf and said that he did not have access to the

Gateway Drive lease before sentencing, but that Brown did.  JA336.  Powell also

stated that Woodward was made aware of the lease before sentencing.  JA337.

After considering the parties' filings and the testimony presented at the

evidentiary hearing, the district court denied Powell's remaining ineffective

assistance of counsel claims.  JA362.  The court found that Woodward "zealously"

objected to the premises enhancement in his position paper and during sentencing.

JA374.  But despite his "thorough efforts," the court "found credible" Wilson's

statements about her drug transactions with Powell at the Gateway Drive

apartment. JA374. The district court determined that it had made "reasonable, correct findings regarding Ms. Wilson's credibility, other related evidence, and the objections presented." JA374.

The court also found that Powell failed to show how Brown's lease and testimony "would have compelled a different ruling on the objection." JA374-375. The court explained that the premises enhancement "can apply even if a defendant does not lease or own the premises," and that "[s]ufficient evidence was produced at the time of sentencing for this Court to find that Mr. Powell was selling drugs from this address regardless of the status of ownership of the premises." JA375.

Finally, the court found that Powell "failed to establish that he has been prejudiced by the alleged deficient performance." JA375. Powell presented no evidence or argument "that shows that the Court would have sustained his objection." JA375. Moreover, Powell's sentence was five years below the Guidelines range, JA374, and the court found that, even if it had sustained the objection to the premises enhancement, his sentence would likely have been the same. JA375. For these reasons, the court rejected Powell's premises enhancement argument and denied the § 2255 motion. JA376.

This appeal followed.

13

## Summary of Argument

This Court should affirm the denial of Powell's ineffective assistance claim for any of three reasons.

*First*, Woodward's representation of Powell was reasonable. Woodward objected to the premises enhancement and vigorously challenged Wilson's credibility. That Powell believes evidence of Brown's lease would have further undermined the reliability of Wilson's statements does not make Woodward's selected strategy constitutionally deficient.

*Second*, omitting arguments that are unlikely to succeed cannot constitute constitutionally deficient performance. Evidence of a lease agreement may be sufficient, but is not necessary, to support application of the premises enhancement. Courts regularly apply the enhancement when the defendant lacks a possessory interest in the premises. Woodward correctly understood the applicable law, and that argument based on who owned or leased the Gateway Drive apartment would likely have been unsuccessful.

*Third*, Powell has not shown that he was prejudiced by Woodward's performance. The district court found that it would still have applied the enhancement had Woodward presented Brown's lease and testimony, and that even absent the enhancement, Powell's sentence would likely have been the same. Because this is not a case where the record is silent as to what the district court

14

might have done, and because Powell has presented no evidence of prejudice, this Court should affirm the denial of Powell's § 2255 motion.

## Argument

Defendants in criminal cases have a Sixth Amendment right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This right exists "at critical stages of a criminal proceeding," including sentencing. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). To establish an ineffective assistance of counsel claim, a defendant must show both that (1) counsel's performance was not objectively reasonable, and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

The district court found that Powell failed to carry his burden on either prong. JA374-375. When considering an appeal from the denial of a § 2255 motion, this Court reviews *de novo* the district court's legal conclusions. *United States v. Morris*, 917 F.3d 818, 822 (4th Cir. 2019). Because the district court held an evidentiary hearing before ruling, its findings of fact are reviewed for clear error. *United States v. Ragin*, 820 F.3d 609, 617 (4th Cir. 2016).

Powell has not made the required showing for either *Strickland* prong. This Court should therefore affirm the district court's decision.

**I.    Powell has not shown that Woodward's performance was unreasonable.**

To establish constitutionally deficient performance, Powell must show that Woodward's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[S]crutiny of counsel's performance must be highly deferential," making "every effort" "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

**A.    Woodward objected to the premises enhancement and vigorously challenged Wilson's credibility.**

The record shows that Woodward capably represented Powell. Before sentencing, the two met "numerous times to discuss and analyze the pre-sentence report (PSR)." JA46; JA274. Powell told Woodward that "he didn't use that apartment, or Ms. Wilson was lying." JA316. Based on this discussion, Woodward objected to the premises enhancement and cross-examined Agent Dyer about Wilson's statements, as "[i]t was her credibility that was [at] stake." JA317.

In a position paper and again during the sentencing hearing, Woodward raised numerous challenges to Wilson's credibility. He argued that Wilson's debrief summary "contain[ed] almost no detail," and that a "single," "vague and unspecific statement of one individual" could not adequately serve as the basis for

16

applying the sentence enhancement. JA48, JA111. He cross-examined Dyer, who

conceded that Wilson was a "heavy drug user" and a heroin addict. JA104.

Woodward also suggested that Wilson was "presumably advised" about "how to

maximize her value to the government" to receive a lower sentence. JA48.

That the district court rejected these arguments does not make Woodward's

lawyering constitutionally deficient. Woodward made reasonable efforts to

undermine Wilson's credibility, and Powell continues to contend that Wilson's

credibility was the key issue. JA195-198; Def. Br. 13, 15-16. Even if Brown's

lease and testimony could have shown that Wilson was unreliable, a failure to raise

one of many plausible arguments does not make counsel ineffective. *See United

States v. Conner*, 456 F. App'x 300, 307 (4th Cir. 2011) ("[E]ven if there were

good arguments that [counsel] did not make, there were many good ones that he

did make"); *Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978) ("[E]ffective

representation is not synonymous with errorless representation").

Tellingly, Powell identifies no case in which any court has held that the

Sixth Amendment requires sentencing counsel to make every conceivable

argument in support of an objection counsel raised. Indeed, "[t]he law does not

require counsel to raise every available nonfrivolous defense." *Knowles v.

Mirzayance*, 556 U.S. 111, 127 (2009). And a reviewing court's task "is not to

grade counsel's performance." *Strickland*, 466 U.S. at 697.

17

**B.    The record shows that further factual investigation was not necessary for competent representation.**

Powell argues that a "reasonably diligent attorney would have investigated the status of the Gateway apartment lease" and conducted a further factual investigation of Powell's control and use of the apartment.  Def. Br. 11-16.

It is true that Woodward had a "duty to investigate and to research" Powell's case "in a manner sufficient to support informed legal judgments."  *United States v. Carthorne*, 878 F.3d 458, 466 (4th Cir. 2017).  But "[p]articularly when evaluating decisions not to investigate further," this Court "must regard counsel's choices with an eye for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991) (internal quotation marks omitted).  The circumstances here show that it was reasonable not to conduct further investigation into the lease or Powell's use of the apartment.

**1.    Investigation of who owned or leased the apartment was not necessary.**

Start with the lease.  Powell argues that investigation would have shown that "Ms. Brown, not Mr. Powell, rented" the apartment, and that "Ms. Brown's lease began only a few months prior to Mr. Powell's arrest, not five years before as Ms. Wilson stated."  Def. Br. 12-13.

18

The record does not support Powell's claim that Wilson made any statement about when Brown's lease began, or whether Powell rented the apartment at any time between 2011 and 2016. Rather, Wilson described "visit[ing] the *defendant's home* on Gateway Drive" "on a dozen occasions since the summer of 2011 to purchase heroin." JA57 (emphasis added); *see also* JA90 (Wilson "indicated that her purchases came from *an address on Gateway Drive* in Portsmouth, in an apartment complex") (emphasis added); JA103 (Wilson "had been to the apartment approximately on 12 occasions").

Based on these statements, it was reasonable for Woodward to focus on undermining Wilson's credibility in the way he did. A defendant can live at or maintain an apartment even if its lease is in another person's name. *See* Def. Br. 13 (citing *United States v. Clark*, 665 F. App'x 298, 302-03 (4th Cir. 2016)). Indeed, "it would defy reason for a drug dealer to be able to evade application of the enhancement by the simple expedient of maintaining his stash house under someone else's name." *United States v. Jones*, 778 F.3d 375, 385 (1st Cir. 2015).

During the habeas evidentiary hearing, Woodward testified that he has "done a lot of drug cases in [his] career," and "[t]ypically" "people will have *what they think is a safe place that's not obvious* that they use to keep narcotics in." JA318 (emphasis added). It was not unreasonable for Woodward to rely on the record and

his decades of experience as criminal defense counsel to determine that further investigation was unnecessary.

This is true even if, as Powell asserts, Woodward was aware of Brown's lease before sentencing. Def. Br. 6. To begin with, Woodward clearly and emphatically disputed this claim. *See* JA268 ("At no time during my representation of Mr. Powell did I become aware of the lease"); JA268 ("I have no memory of being asked" to get the lease agreement "and my file does not indicate[] any such request from Mr. Powell"); JA312 ("I've had the same fax number and the same system for getting things into my files for 30-plus years. So it was not in my file . . . my file did not contain that lease."). Regarding Woodward's reputation, the district court stated that he is "an honorable man of this court. He's got his file, it looks like he's got his assistant, and he'll tell us if he received a lease or not, right?" JA300.

But assuming, *arguendo*, that Woodward knew about the lease, not investigating further would have been reasonable. Powell admitted that Wilson was his co-conspirator, and that he supplied her with heroin multiple times over several years. JA43; JA31; JA344. Wilson bought heroin from Powell at the Gateway Drive address about a dozen times. JA57; JA103; JA387. On one occasion, she saw Powell take possession of a kilogram of heroin "at his home," and Wilson heard Powell cut the heroin using a blender or grinder. JA57-58.

Based on these facts, Woodward could reasonably have concluded that more information about Powell's girlfriend's lease would not materially affect the court's credibility determinations. Indeed, the court found Wilson to be generally credible, as even though Powell was "willing to throw [his] blood relative under the bus," his own statements "corroborate[d] what she says about you" with respect to a firearm enhancement. JA136.

Additionally, had Woodward introduced Brown's testimony, the government likely would have had the opportunity to cross-examine Brown and present evidence and argument about her credibility. As Woodward said during the evidentiary hearing, "hindsight is 2020," but it is far from clear that Brown's lease and testimony "would have made any difference." JA313.

> **2.  Further investigation of Powell's use of the apartment was not necessary.**

Turning to the investigation of Powell's use of the apartment, he makes two arguments. Neither shows that Woodward's performance was deficient.

*First*, Powell believes that further investigation may have supported an argument that the apartment was only used for a drug transaction once. Def. Br. 15. The record does not support this assertion. True, Wilson stated that "on one occasion, she observed an individual come to Powell's residence and deliver a kilogram of heroin." JA387.

But Wilson *also* stated that Powell used the apartment for drug transactions at least a dozen times between 2011 and 2016. Wilson told Agent Dyer that "her *purchases* came from an address on Gateway Drive in Portsmouth." JA90 (emphasis added). During the sentencing hearing, Woodward specifically asked Dyer whether Wilson said she "had been purchasing heroin from Powell since the summer of 2011," and that "she had been to the apartment approximately on 12 occasions." JA103. Dyer answered, "Yes, sir." JA103.

Wilson's statements and Dyer's testimony show that it was reasonable for Woodward to decline to make an "incidental use" argument. *See* U.S.S.G. 2D1.1 cmt. 17; *United States v. Saxby*, 754 F. App'x 161, 164 (4th Cir. 2018) ("[T]he fact that only three documented drug transactions occurred at the house does not compel the conclusion that the distribution of heroin was not a principal use of the premises"); *United States v. Fonseca*, 834 F. App'x 75, 79 (5th Cir. 2020) ("the evidentiary bar for 'primary or principal use' has not been set high," and at least one court has upheld application of the enhancement where "the narcotics intended for distribution were stored in the defendant's home on a single occasion").

*Second*, Powell argues that Brown's lease would have "directly contradicted" Wilson's statements, as it would show that Powell could not have been using the apartment before 2016. Def. Br. 15-16. But Powell could have used the apartment even if it was leased by someone else. And Wilson stated that

22

she had been to the apartment multiple times since 2011 to buy heroin.  JA374.

The district court affirmed that it "made reasonable, correct findings regarding Ms.

Wilson's credibility" even after considering Powell's arguments about the lease

"and the testimony of his ex-girlfriend, Dwanesa Brown."  JA374.

### C.    Omitting arguments that are unlikely to succeed cannot constitute deficient performance.

Even if Woodward could have raised arguments based on Brown's lease, his

performance was not constitutionally deficient, because, as the district court

correctly found, such arguments likely would not have succeeded.  *See* JA374-375.

Powell argues that who leased the apartment is "one of the *most* legally pertinent

questions to determine if the defendant maintained the premise."  Def. Br. 17.

Applicable case law shows that this assertion is incorrect.

"[W]hen there is relevant authority strongly suggesting that a sentencing

enhancement is not proper," "counsel may be constitutionally required to object."

*Carthorne*, 878 F.3d at 466.  Conversely, when, "far from 'strongly supporting'"

an argument against a sentence enhancement, the law "tilt[s] decidedly in the other

direction, making it unlikely (though not inconceivable) that [the] claim could

succeed," a failure to raise the argument does not constitute deficient performance.

*Morris*, 917 F.3d at 825.

Cases discussing the drug premises enhancement show that arguments based

on Brown's lease likely would not have succeeded.  Powell's sentencing hearing

23

was held on March 31, 2017.  JA68.  A month before the hearing, this Court

affirmed the application the enhancement in *United States v. Holloman*, 679 F.

App'x 256 (4th Cir. 2017).

In *Holloman*, the defendant pled guilty to possessing with the intent to

distribute heroin.  *Id*. at 257.  On direct appeal in an *Anders* brief, counsel argued

that the district court erred by applying the enhancement because "the home was

rented by an individual other than Mr. Holloman," the "only items identified as

Mr. Holloman's personal possessions were found in a car parked outside of the

residence," and "there was no evidence that he held a possessory interest in or

controlled access to the premises."  Appellant's Br., 2016 WL 4709049, at *12

(Sept. 7, 2016).

This Court reviewed the record and rejected the defendant's argument.  679

F. App'x at 258.  "Police found Holloman inside the premises without the owner,

but with a person who appeared to receive orders from Holloman regarding the

drugs and paraphernalia inside the home."  *Id*.  The Court found these facts

sufficient to "indicate Holloman controlled the illicit activities at the premises,"

and therefore held that the application of the enhancement was not plain error.  *Id*.

*Holloman* is just one of many examples.  *See, e.g.*, *United States v.*

*Christian*, 544 F. App'x 188, 190-91 (4th Cir. 2013); *Clark*, 665 F. App'x at 302-

03; *United States v. Carter*, 834 F.3d 259, 262-63 (3d Cir. 2016) ("Carter's

argument that he lacked the possessory interest necessary to have 'maintained' the properties because he was not the owner or renter is meritless"); *United States v. Tippins*, 630 F. App'x 501, 504 (6th Cir. 2015) (defendant "did not have a 'possessory interest' in the relevant home (apparently his girlfriend held the title)," but "'he did control[] access to' and 'activities at' the home"); *Jones*, 778 F.3d at 385; *United States v. Garcia*, 774 F.3d 472, 475-76 (8th Cir. 2014) (per curiam).[1]

That Brown's lease likely would not have moved the needle was confirmed by the district court, which itself rejected the argument. JA374-375. The court acknowledged that, "[i]f Ms. Brown had testified, she would have stated that she leased the apartment at Gateway Drive in 2016, the lease was not a renewal of a prior term, and that she spoke to Mr. Woodward about the lease and provided a copy of it to him prior to sentencing." JA374. But Powell did not "show[] how this evidence would have compelled a different ruling on the objection," as "[t]he enhancement can apply even if a defendant does not lease or own the premises."

---

[1] Powell states that Woodward "cited no case law in his written pleadings or at the sentencing hearing." Def. Br. 17 n.3. Powell has not identified, and the government has not located, any authority supporting the suggestion that counsel must cite case law during sentencing to show a competent understanding of the relevant legal issues. In any event, Woodward explained during the habeas evidentiary hearing that "in [his] experience with the judges in this court, it's not really legally pertinent who owns or rents" the apartment; "it's what it's used for." JA317. The preceding discussion shows that this was a reasonable understanding of then-existing law.

JA374-375.  Brown's lease and testimony would not have mattered, the court

concluded, because "[s]ufficient evidence was produced at [the] time of sentencing

for this Court to find that Mr. Powell *was selling drugs from this address*

*regardless of the status of ownership of the premises*."  JA375 (emphasis added).

Powell acknowledges that this Court has, on multiple occasions, held that a

defendant can "maintain" a premises within the meaning of U.S.S.G.

§ 2D1.1(b)(12) even if he did not own or lease the premises.  Def. Br. 13.  But

Brown's lease and testimony, he argues, may have shown that Powell did not

exercise control over the Gateway Drive apartment, or that Powell did not

regularly use the apartment to distribute drugs.  *Id*. at 13-16.  In *Clark* and

*Christian*, for instance, this Court discussed relevant factors like whether the

defendant had a key to the premises, whether he regularly picked up drugs there,

and whether tools of the trade like "spoons and bowls with cocaine residue" were

in the apartment.  *Christian*, 544 F. App'x at 191; *Clark*, 665 F. App'x at 303.

Powell's argument is "unavailing" because "although a court might find

some facts *sufficient* to support application of the enhancement in one case, those

same facts do not become *necessary* for application of the enhancement in every

case."  *United States v. Carbajal*, 717 F. App'x 234, 238 (4th Cir. 2018).  Here, the

facts presented to the district court were sufficient for the court to *twice* conclude

that Powell "'controlled access to, or activities at, the premises.'"  *Id*. (quoting

26

U.S.S.G § 2D1.1 cmt. 17).  *See, e.g.*, JA83 (Powell took possession of a kilogram of heroin at the Gateway Drive apartment and used a grinder or blender to cut it); JA90 (Wilson made multiple drug purchases from Powell at the apartment); JA90, JA104 (Agent Dyer surveilled Gateway Drive and verified that Powell "lived or had an apartment" there).  Powell may disagree with the district court's findings, but he did not, and now cannot, present any facts showing that his objection to the premises enhancement would have been sustained.

In short, Powell has not met his burden on *Strickland*'s performance prong. Brown's lease and testimony likely would not have precluded application of the premises enhancement, so any omission of this evidence cannot have been constitutionally deficient.  And both the record and the case law show that Woodward's performance was objectively reasonable.

## II.    Powell has not shown that he was prejudiced by Woodward's performance.

Like the performance prong, *Strickland*'s prejudice prong presents an independent reason to affirm the denial of Powell's § 2255 motion.  466 U.S. at 697.  To establish prejudice, Powell "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

## A.    The district court would have applied the enhancement even with evidence of Brown's lease and testimony.

Powell was not prejudiced by Woodward's performance because the district court would have applied the premises enhancement to Powell's offense level even if it had considered Brown's lease and testimony. We know this because the court told us as much. JA374-375; *supra* p. 25. The district court's § 2255 order is clear. It shows that there is not a reasonable probability that the court would have sustained Powell's objection and, therefore, that his sentence would have been different. Accordingly, Powell cannot establish prejudice. *See United States v. Freeman*, 24 F.4th 320, 332 (4th Cir. 2022) (en banc) (a defendant must show "a reasonable probability that her sentence would have been different").[2]

What's more, in addition to showing that Woodward's performance was reasonable, relevant cases on the premises enhancement also show that Powell

---

[2] Powell's plea agreement presents another reason why he cannot show prejudice. The court's § 2255 order made clear it would still have applied the enhancement. Powell waived the right to appeal his sentence "on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal." JA32-33. Thus, because "any error by the district court in overruling an objection by counsel would have been effectively 'quarantined' by [Powell's] appeal waiver," he cannot show that, but for Woodward's performance, there is a reasonable probability he would have received a shorter sentence. *United States v. Smith*, 497 F. App'x 269, 273-274 (4th Cir. 2012).

could not have been prejudiced by that performance.[3]  That is, even without the district court's clear explanation of how it would have ruled, applicable law shows that Brown's lease and testimony likely would not have changed the outcome.

Last year, for example, this Court affirmed an application of the premises enhancement in *United States v. Lotharp*, 2023 WL 2136373 (4th Cir. Feb. 21, 2023).  Lotharp argued that there was no evidence that he maintained the alleged stash house.  Appellant's Br., 2021 WL 1541295, at *26 (Apr. 16, 2021).  The house "belonged" to his co-defendant, who lived there, had her children and belongings there, and had a license showing her address at the location.  *Id*. at *25.

This Court held that the premises enhancement was not erroneously applied. 2023 WL 2136373, at *2.  The Court reiterated that the lack of a possessory interest is not dispositive.  *Id*.  It found sufficient evidence that "Lotharp stored drugs at the premises, controlled access to the premises, and was near the premises when police executed the search warrant." *Id*.

Similar examples abound.  *See, e.g.*, *United States v. Barnett*, 48 F.4th 216, 220-221 (4th Cir. 2022); *United States v. Stukes*, 774 F. App'x 788, 789-91 (4th Cir. 2019); *Carbajal*, 717 F. App'x at 238-239; *United States v. Lockhart*, 732 F.

---

[3] While *Strickland*'s performance prong "is governed by the law as it stood when the defendant's lawyer acted," whether Powell was prejudiced "is governed by the law as it stands at the time a court is considering a defendant's ineffective-assistance claim."  *United States v. Baker*, 719 F.3d 313, 321 (4th Cir. 2013).

App'x 842, 848-49 (11th Cir. 2018).  The case law shows that the absence of Brown's lease and testimony did not prejudice Powell's defense.[4]

### B.    The district court confirmed that Powell's sentence likely would have been the same.

Even if this Court finds that Woodward's performance was deficient, and that there is a reasonable probability that, despite its clear statements to the contrary, the district court would have sustained Powell's objection had it considered Brown's lease and testimony, the Court should still affirm.  The record shows that, even without the premises enhancement, the district court likely would have imposed the same sentence.

The district court expressly stated that "Mr. Powell's sentence likely would have been the same."  JA375.  Powell presented no "evidence or substantive argument that shows" the court would have "granted him a more lenient sentence if the lease were produced."  JA375.  The court correctly calculated the Guidelines range that would have applied and stated that Powell's sentence of 300 months

---

[4] Powell argues that a reasonable probability of a different sentencing outcome exists because the government "*solely* relied on Ms. Wilson's statement, as reported by Agent Dryer [sic]."  Def. Br. 20.  Not so.  The record shows that Dyer's investigation, his testimony, and Wilson's statements, which the district court twice found to be credible, all supported application of the enhancement.  *See Stukes*, 774 F. App'x at 790 ("[H]earsay is admissible at sentencing," and that it may be uncorroborated "does not, by itself, render it unreliable.").

would be at "the low end" of that revised range of 292 to 365 months.  JA375-376;
*see* U.S.S.G, Ch. 5, Part A (Sentencing Table).

Additionally, Powell's sentence was a *five-year* downward variance from the
original Guidelines range.  JA374; JA119.  And the district court's extensive, 25-
page discussion of the 18 U.S.C. § 3553(a) sentencing factors makes clear that, in
this case, the court likely would not have imposed a lower sentence than it did,
even if Powell's Offense Level was 35 instead of 37.  *See* JA132-159.

The government's sentencing position statement summarized Powell's
criminal history as described in the PSR.  JA62-63.  Powell "racked up more than
two dozen convictions, including six for narcotics, . . . and for conduct involving
violence against two different women."  JA63.  This conduct included a 2012
incident during which Powell "ripped his girlfriend out of a parked car and began
attacking her with a kitchen knife," leaving her with "lacerations on her face, left
arm, and right hand, which required medical treatment and stitches."  JA63.

Before imposing a sentence, the district court found that Powell is "violent,"
"dangerous," and has a "violent mindset."  JA132; JA135.  Addressing the high-
speed chase precipitating his arrest, the court exclaimed: "I'm just thankful that
you weren't killed and that no one else was killed."  JA144.  The court detailed
Powell's lengthy criminal history, including multiple acts of violence against
women.  JA146-151.  The court stated that Powell's Criminal History Category

31

was "the worst category over here in federal court," and that his score could have

been even worse, as the probation office elected not to add points for 11 of

Powell's prior convictions.  JA151-152; JA158.

But the court also stated that the Guidelines penalty "is severe," and that it

had to "look at [Powell's] actual conduct."  JA142-143.  The court considered a

five-page, single-spaced letter Powell wrote saying that "he has a purpose in life, to

help others, because he's listening to his God."  JA140.  The court extensively

considered Powell's age, his background, and the presence of his family in his life.

JA153-158.  And after this lengthy evaluation, the court sentenced Powell to 300

months, 60 months below the Guidelines range.  JA159.

It is true, as Powell argues (Def. Br. 22), that in "most cases a defendant who

has shown that the district court mistakenly deemed applicable an incorrect, higher

Guidelines range has demonstrated a reasonable probability of a different

outcome."  *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016); *see also*

*Freeman*, 24 F.4th at 331-32.  Thus, when "the record is silent as to what the

district court might have done had it considered the correct Guidelines range, the

court's reliance on an incorrect range in most instances will suffice to show an

effect on the defendant's substantial rights."  *Molina-Martinez*, 578 U.S. at 201.

But here, the record is *not* silent.  *Compare* this case *with United States v.*

*Nelson*, 37 F.4th 962, 970 (4th Cir. 2022) ("[A]s in *Molina-Martinez*, the district

court 'said nothing to suggest that it would have imposed' the same sentence regardless of the statutory and Guidelines sentencing ranges"); *United States v. Green*, 996 F.3d 176, 187 (4th Cir. 2021) ("[T]his is the more usual case in which the record cannot establish what sentence the district court would have imposed had it considered the correct and lower Guidelines range").

It is also true that a district court's statement that it would have imposed the same sentence does not *per se* insulate that sentence from a *Strickland* prejudice review. *Freeman*, 24 F.4th at 332. But *Freeman* does not require this Court to apply "mandatory presumptions and rigid rules" in lieu of an "examination of the record." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). Indeed, *Molina-Martinez*, on which *Freeman* relied, recognized that "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." 578 U.S. at 200. That is because "[t]he sentencing process is particular to each defendant" and "a reviewing court must consider the facts and circumstances of the case before it." *Id.* The Supreme Court recognized that "[t]he record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range." *Id.* In some cases, "a detailed explanation of the reasons" for the selected sentence "could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." *Id.*

In this case, the district court set forth a detailed explanation of the reasons for the sentence based on its individualized assessment of Powell's offense, criminal history, and characteristics. The court noted that the advisory Guidelines penalty was "severe," and it determined Powell's sentence based on his "actual conduct." JA142-143. Thus, the district court's clear statements in the record show that, even if Powell's Offense Level would have been a 35 instead of a 37, there is not a reasonable probability that this two-point difference would have resulted in a lower sentence.

### Conclusion

The Court should affirm the district court's denial of Powell's § 2255 motion for the foregoing reasons.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____

Vetan Kapoor
Assistant United States Attorney

34

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case.  The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.


## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 8,486 words) as counted by Microsoft Word.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.


/s/
_____
Vetan Kapoor
Assistant United States Attorney