No. 21-6992

In the

# United States Court of Appeals

## For the Fourth Circuit

UNITED STATES OF AMERICA,

*Appellee,*

v.

NATHANIEL POWELL, a/k/a Nate,

*Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 2:16-cr-97

**REPLY BRIEF OF APPELLANT NATHANIEL POWELL**

Erin B. Ashwell
Morgan V. Maloney
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4748
eashwell@mcguirewoods.com
mmaloney@mcguirewoods.com

*Counsel for Appellant Nathaniel Powell*

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT ....................................................................................2

I.    Mr. Woodward's performance was not reasonable. ...............................2

   A.    Mr. Woodward's failure to investigate was not a reasonable strategic choice..............................................................2

   B.    A reasonable attorney would have submitted the Lease into evidence. ....................................................................6

II.   Mr. Woodward's deficient performance prejudiced Mr. Powell. .......11

   A.    There is a reasonable probability that the District Court would not have applied the enhancement if the Lease had been entered. ..................................................................11

   B.    Because the improper application of the enhancement raised the Guideline's range, Mr. Powell suffered prejudice. ....................................................................14

CONCLUSION ...............................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buckner v. Polk,*
   453 F.3d 195 (4th Cir. 2006) ...............................................................12

*Elmore v. Ozmint,*
   661 F.3d 783 (4th Cir. 2011) ...............................................2, 5, 6, 12, 14

*Gaines v. Superintendent Benner Twp. SCI,*
   33 F.4th 705 (3d Cir. 2022) ..................................................................5

*Kimmelman v. Morrison,*
   477 U.S. 365 (1986)...............................................................1, 3, 6, 9

*Molina-Martinez v. United States,*
   578 U.S. 189 (2016)...................................................................15, 16

*Peugh v. United States,*
   569 U.S. 530 (2013).........................................................................16

*Rosales-Mireles v. United States,*
   585 U.S. 129 (2018).........................................................................17

*Strickland v. Washington,*
   466 U.S. 668 (1984).................................................................1, 2, 12

*United States v. Baptiste,*
   8 F.4th 30 (1st Cir. 2021) ...................................................................9

*United States v. Carthorne,*
   878 F.3d 458 (4th Cir. 2017) ..............................................................5, 7

*United States v. Christian,*
   544 F. App'x 188 (4th Cir. 2013) ........................................................9

*United States v. Clark,*
   665 F. App'x 298 (4th Cir. 2016) ......................................................8, 9

*United States v. Coby*,
65 F.4th 707 (4th Cir. 2023)........................................................16, 17

*United States v. Cohen*,
888 F.3d 667 (4th Cir. 2018)..............................................................11

*United States v. Crawford*,
734 F.3d 339 (4th Cir. 2013).........................................................12, 13

*United States v. Freeman*,
24 F.4th 320 (4th Cir. 2022).............................................................7, 15

*United States v. Holloman*,
679 F. App'x 256 (4th Cir. 2017) .........................................................9

*United States v. Johnson*,
410 F.3d 137 (4th Cir. 2005)..............................................................11

*United States v. Roane*,
378 F.3d 382 (4th Cir. 2004)................................................................6

*United States v. Williams*,
No. 20-7402, 2023 WL 8183301 (4th Cir. Nov. 27, 2023) .............................15

*Wiggins v. Smith*,
539 U.S. 510 (2003)...........................................................................5

## Statutes

U.S.S.G., Ch. 5, Part A........................................................................17

U.S.S.G. § 2D1.1(b)(12).......................................................................7

U.S.S.G. § 2D1.1 cmt. 17.................................................................8, 10

## Other Authorities

United States Sentencing Commission, *Guidelines Manual* (Nov. 2016) .........7

Mr. Powell did not have effective assistance of counsel at his sentencing. The Government excuses Mr. Woodward's failure to investigate the basis of the premises enhancement as a strategic choice and argues that, regardless, Mr. Powell experienced no prejudice because the District Court failed to account for the Guidelines in sentencing him. In a thinly-veiled character attack, the Government discusses Mr. Powell's criminal conduct at length. But, the "constitutional rights of criminal defendants are granted to the innocent and the guilty alike." *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986). Here, Mr. Powell does not contest that he owes a debt to society — this appeal instead turns on whether Mr. Woodward's representation "undermined the proper functioning of the adversarial process." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). It did. The complete failure to investigate cannot be a strategic choice and, because the District Court sentenced Mr. Powell under the incorrect Guidelines-range, he suffered constitutionally cognizable prejudice. As Mr. Powell has successfully demonstrated both prongs of the *Strickland* analysis, this Court should vacate his sentence and remand the case for re-sentencing.

## ARGUMENT

## I.    Mr. Woodward's performance was not reasonable.

Mr. Woodward failed to adequately investigate the basis of the drug premises enhancement. Op. Br. at 10. The Government argues that Mr. Woodward made a strategic choice not to investigate the enhancement and that, in any event, the Constitution did not require him to pursue an argument that was "unlikely to succeed." Gov. Br. at 14. But, Mr. Woodward's decision not to conduct *any* investigation in the premises enhancement was not a strategic choice. And, his decision not to raise the argument that Mr. Powell did not possess or control the apartment cannot be the excused on the basis of futility.

### A.    Mr. Woodward's failure to investigate was not a reasonable strategic choice.

Mr. Woodward failed to reasonably investigate Mr. Powell's defense to the premises enhancement and his failure to do so cannot be chalked up to reasonable litigation strategy. As the Supreme Court has made clear, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Elmore v. Ozmint*, 661 F.3d 783, 857 (4th Cir. 2011). This is because the adversarial "process generally will not function

properly unless defense counsel has done *some* investigation into the prosecution's case and into various defense strategies." *Kimmelman*, 477 U.S. at 384 (emphasis added). When defense counsel "neither investigate[s], nor [makes] a reasonable decision not to investigate[] the State's case … [he] puts at risk both the defendant's right to an ample opportunity to meet the case of the prosecution … and the reliability of the adversarial testing process." *Id.* at 385 (cleaned up).

By his own admission Mr. Woodward made *no* investigation into the premises enhancement, much less a reasonable one. When Mr. Woodward first spoke with Mr. Powell, he testified that Mr. Powell "expressed to [him] that [the Gateway Drive apartment] wasn't used for drug operations." JA319. So, Mr. Woodward objected to the premises enhancement. But that is all he did. At the § 2255 evidentiary hearing, Mr. Woodward attested that his "investigation" into the enhancement consisted of nothing more than "consulting with [his] client, filing the objection, and preparing to examine the agent." JA317. He did not look any further into Mr. Powell's defense—he conducted no witness interviews and no fact gathering. JA317. About the Lease, the legal document establishing that his client had no possessory interest in the subject apartment, Mr. Woodward, in his words, "didn't do

anything to investigate [it]." JA317. Mr. Woodward did not merely conduct a deficit investigation; he did not conduct *any* investigation.

Mr. Woodward provides no reasonable justification for his failure to investigate the premises enhancement. The two justifications he relied on are: (1) his experience representing other drug dealers; and (2) his belief that "[i]n the scope of a case like this, you know, two points was not going to be the make or break." JA316; JA318; *see* Gov. Br. at 20. Neither of these are reasonable grounds for failing to conduct even a cursory investigation into Mr. Powell's defense.

As to his first justification, Mr. Woodward explained, "Typically, a lot of times -- I've done a lot of drug cases in my career -- people will have what they think is a safe place that's not obvious that they use to keep narcotics in." JA318. It may be true that, in Mr. Woodward's experience, "[t]ypically" drug dealers do maintain premises for the distribution of narcotics. But, that did not mean *Mr. Powell* did. Mr. Powell is entitled to a defense tailored to his case – not the tired truisms of decades of criminal work. Mr. Woodward's experience in other cases does not excuse him from doing basic research into Mr. Powell's case. Instead of being Mr. Powell's advocate, taking his statement at face-value, and investigating his case, Mr. Woodward reverted

4

to his decades of experience with other clients and decided, without further investigating, that Mr. Powell's case must be futile.

Mr. Woodward's second justification, his belief that "[i]n the scope of a case like this, you know, two points was not going to be the make or break," is also not a reasonable ground. JA316. It is true that, regardless of the outcome of this objection, Mr. Powell would (and will) be facing a significant period of incarceration. But, the addition of those two points increased the Guidelines-range by *years.* Op. Br. at 18. In truth, Mr. Woodward's "'failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment.'" *United States v. Carthorne*, 878 F.3d 458, 467 (4th Cir. 2017) (quoting *Wiggins v. Smith*, 539 U.S. 510, 526 (2003)); *see also Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 710 (3d Cir. 2022) ("inattentiveness is strong evidence of ineffective assistance").

Mr. Woodward's failure to investigate the factual underpinnings of the premises enhancement cannot be considered a "strategic" choice. *See Elmore*, 661 F.3d at 863–64. Instead,

> this is one of those instances of deficient performance in which counsel, despite a professional obligation to conduct an investigation, "has failed to investigate the defense at all or has performed an investigation so minimal that no strategic reason could be given for the failure to investigate further."

*Id.* at 866 (quoting *United States v. Roane*, 378 F.3d 382, 411 (4th Cir. 2004)) (cleaned up).

Attempting to excuse Mr. Woodward's failure to investigate, the Government argues that he "capably represented" Mr. Powell by "object[ing] to the premise enhancement and cross-examin[ing] Agent Dyer." Gov. Br. at 16. But, as this Court and the Supreme Court have found, when counsel has failed to adequately prepare for a proceeding, "not even 'defense counsel's vigorous cross-examination [or] attempts to discredit witnesses'" can "'lift counsel's performance back into the realm of professional responsibility.'" *Elmore*, 661 F.3d at 861 (quoting *Kimmelman*, 477 U.S. at 385–86). Counsel's "failure to investigate cannot be excused by … [his] other efforts." *Id.*

### B.     A reasonable attorney would have submitted the Lease into evidence.

Mr. Woodward's failure to raise the possessory interest and infrequent use arguments falls below reasonable standards of competency. Op. Br. at 11. The Government argues that Mr. Woodward had no obligation to press these defenses because "such arguments likely would not have succeeded."

Gov. Br. at 23. This is not true. By not entering the Lease into evidence, Mr. Woodward evinced a fundamental misunderstanding of the law.

To satisfy the performance prong of the *Strickland* analysis, counsel must "demonstrate a basic level of competence regarding the proper legal analysis governing each stage of a case." *United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (quoting *Carthorne*, 878 F.3d at 466).

In this case, the Guidelines are clear. For the Government to satisfy its burden in support of the premises enhancement, it must prove that (1) the defendant "maintained" the premises; and (2) the premises was used for drug activities. Op. Br. at 10; U.S.S.G. § 2D1.1(b)(12).[1] Mr. Woodward did not effectively represent Mr. Powell as to either prong.

The Lease would have directly supported Mr. Powell's assertion that he did not maintain the Gateway Drive apartment. As to the "maintenance" prong, Mr. Woodward explained that "it's not really legally pertinent who owns or rents [the premises]." JA317. But this statement is contradicted by the Guidelines' commentary and then- (and now-) existing Fourth Circuit

---

[1] All references and citations to U.S.S.G. are to the 2016 version of the manual. United States Sentencing Commission, *Guidelines Manual* (Nov. 2016).

7

precedent. To determine if a defendant "maintained" a premises, the Guidelines instruct courts to consider "(A) whether the defendant held a possessory interest in (e.g., *owned or rented*) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1 cmt. 17 (emphasis added). The Lease would have gone directly to the first consideration and proved that Mr. Powell did not own or rent the Gateway Drive apartment.

It is true that such a finding would not end the inquiry. But, when determining if a defendant *without* a possessory interest in the premises maintained it, courts conduct a fact-intensive inquiry into the defendant's level of control. Op. Br. at 13–14 (gathering cases). For example, in *United States v. Clark*, the Fourth Circuit upheld the application of the premises enhancement under a plain error but found its application a "close call." 665 F. App'x 298, 302–04 (4th Cir. 2016) (unpublished). In *Clark,* the defendant had:

> (1) delivered drugs to the apartment on multiple occasions; (2) occupied the apartment with full knowledge of the kilogram quantities of cocaine and heroin, drug-related cash proceeds, and a firearm stored there; (3) received drugs at the apartment as compensation for her role in the scheme; (4) lodged at the apartment overnight for the exclusive purpose of advancing the drug trafficking business; (5) along with her coconspirators, "stretched" drugs at the apartment to

8

improve the profits of the drug trade; (6) sought a larger firearm in order to aid in controlling access and activities at the apartment; (7) made an additional delivery to the apartment and stayed there for "extended periods" after one of her coconspirators was arrested; and (8) devoted her activities at the apartment solely to the drug distribution operation.

*Id.* at 303–04. This case teaches that, when a defendant does not have possessory interest in the premises, the Government bears the burden of assembling additional proof regarding his activities in the premises. *See also United States v. Christian*, 544 F. App'x 188, 191 (4th Cir. 2013) (unpublished); *United States v. Holloman*, 679 F. App'x 256, 258 (4th Cir. 2017) (unpublished).

In Mr. Powell's case, because Mr. Woodward never investigated nor submitted the Lease, no evidence of this type was entered. In fact, Mr. Woodward admitted that he never looked into "what Mr. Powell's access was to that premises." JA318; *see* Op. Br. at 11–14. We do not know what evidence, if any, the Government could have marshalled.[2] But, based on the

---

[2] Of course, there is a chance that Mr. Woodward's investigation would have turned up facts that would not have aided Mr. Powell's case. But, the right to counsel is about the "fundamental fairness of the proceeding[s]," regardless of whether the defendant in question may be guilty. *United States v. Baptiste*, 8 F.4th 30, 37 (1st Cir. 2021) (cleaned up); *see also Kimmelman*, 477 U.S. at 380. Mr. Powell has the right to counsel who will zealously investigate and defend his case, regardless of what that investigation may, in fact, reveal.

scant evidence in the PSR, if *Clark* was a "close call" and only upheld under plain error, it cannot be said that Mr. Powell's argument would have been so futile as not to merit raising.

The same is true as to the "use" prong. When evaluating the premises' "use" for drug activity, courts "consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." U.S.S.G. § 2D1.1 cmt. 17. The Government's evidence as to Mr. Powell's "use" of the apartment relied solely on the words of Ms. Wilson. *See* Gov. Br. at 27. As discussed *infra,* the Lease, starting only five *months* before Mr. Powell's arrest, would have contradicted Ms. Wilson's otherwise uncontested testimony that Mr. Powell had used the Gateway Drive apartment for drug activities for five *years*. JA118-119, JA246-247; JA44; Op. Br. at 15–16.

Mr. Woodward's failure to investigate and misapprehension of the law constitute deficient performance.

## II.    Mr. Woodward's deficient performance prejudiced Mr. Powell.

### A.    There is a reasonable probability that the District Court would not have applied the enhancement if the Lease had been entered.

If Mr. Woodward had entered the Lease and conducted a reasonable investigation in the premises enhancement, there is a reasonable probability that the Court would have sustained Mr. Powell's objection to the premises enhancement. Op. Br. at 19. The Government disagrees, arguing that "applicable law shows that Brown's lease and testimony likely would not have changed the outcome."[3] Gov. Br. at 29. That is not so.

---

[3] The Government also argued that Mr. Powell's "plea agreement presents another reason why he cannot show prejudice" because the District Court "made clear it would still have applied the enhancement." Gov. Br. at 28 n.2. But, Mr. Powell's plea agreement explicitly preserved his right to bring an ineffective assistance of counsel claim. JA32-33. The Court's post-hac determination, that it would have imposed the same sentence, amounts to no more than an advisory opinion of what it says it would have done if the evidence had been presented before it. It does not deprive Mr. Powell of his right to have effective counsel present his case and actually put this evidence before the Court. To find otherwise would insulate all cases in which the district court makes a finding of no prejudice from collateral attack. Furthermore, this Court has squarely "recognized that an appeal waiver does not preclude … a contention that 'proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel.'" *United States v. Cohen*, 888 F.3d 667, 683 (4th Cir. 2018) (quoting *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005)). Nor could it. A defendant cannot "knowingly" consent to ineffective assistance. *See id.* at 679.

To satisfy the prejudice prong, the "defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693. Instead, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A lower standard than "preponderance of the evidence," *Buckner v. Polk*, 453 F.3d 195, 203 (4th Cir. 2006), a "reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694. When determining prejudice, courts look to the entire record. *Elmore*, 661 F.3d at 868. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696.

Here, the record on the premises enhancement is slim. The enhancement was sustained based on the hearsay testimony of Ms. Wilson, a known drug addict and co-conspirator in the case.[4] Op. Br. at 20; *see United*

---

[4] The Government argues that the District Court also relied on Agent Dyer's independent "investigation" in applying the premises enhancement. Gov. Br. at 26–27; 30 n.4. But Agent Dyer attested that, at most, his investigation showed that Mr. Powell "lived or had an apartment on Gateway Drive." JA104. He never entered the apartment and never saw any drug-processing equipment. JA104. He does not even provide the apartment's address or

*States v. Crawford*, 734 F.3d 339, 343 (4th Cir. 2013) (the fact finder can

consider a witness's status as a drug addict and a criminal in weighing

credibility). The Government, rising to Ms. Wilson's defense, argues that the

District Court found Ms. "Wilson to be generally credible" and that it would

have relied on her testimony regardless.[5] Gov. Br. at 21. But this ignores the

fact that the Lease would have contradicted Ms. Wilson's otherwise

*un*contested testimony, and would have been an objective piece of evidence

with which to further undermine Ms. Wilson.

At sentencing, Ms. Wilson's statements, as told by Agent Dyer, stood

uncontested. For instance, according to Agent Dyer, Ms. Wilson told him she

had purchased drugs from Mr. Powell for five years and had visited the

apartment on 12 occasions throughout the conspiracy. JA103. Mr.

---

apartment number. Nor did Agent Dyer provide any testimony regarding
Mr. Powell's degree of "control" over the apartment. If Mr. Woodward had
entered the Lease into evidence, Agent Dyer's sole independent conclusion
could have been explained as Mr. Powell visiting his girlfriend. Agent Dyer
himself conceded that the entire premises enhancement was based on one
statement by Ms. Wilson. JA104-105.

[5] In support of this proposition, the Government cites the District Court's
statement that Ms. Wilson is Mr. Powell's "blood relative." Gov. Br. at 21
(citing JA136). In actuality, Mr. Powell and Ms. Wilson are not blood
relations. Occupying opposing sides of the family tree, Mr. Powell and Ms.
Wilson are uncle and aunt, respectively, to the same niece. JA56.

Woodward put on no testimony and no evidence to contradict her assertions. But, if Mr. Woodward had adequately investigated the existence of the Lease and the evidence surrounding Mr. Powell's degree of control over and use of the apartment, he could have undermined Ms. Wilson's assertion about the length of time Mr. Powell had access to the apartment. In that case, the Court "would have seen a drastically different—and significantly weaker—prosecution case." *Elmore*, 661 F.3d at 870.

The Government's evidence at sentencing amounted to little more than a feather—sufficient to satisfy the preponderance of the evidence standard, but only just. The addition of the Lease, on Mr. Powell's otherwise empty side of the scale, could easily have tipped it in his favor. Mr. Powell has sufficiently demonstrated that Mr. Woodward's deficient performance "undermine[s] confidence" in the outcome of the objection.

### B.    Because the improper application of the enhancement raised the Guideline's range, Mr. Powell suffered prejudice.

The District Court's reliance on an improper Guidelines-range prejudiced Mr. Powell. Op. Br. at 18. The Government argues that, regardless of the proper Guidelines-range, the District Court would have imposed the same sentence and, focusing on Mr. Powell's character rather

than Mr. Woodward's conduct, recites various portions of the Government's sentencing position statement. Gov. Br. at 30–31. The Government fails to overcome the presumption that, if a defendant is sentenced under an incorrectly calculated Guidelines-range, he suffered prejudice.

"When a defendant is sentenced under an incorrect Guidelines range … the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). This is a strong presumption. For example, this Court found constitutionally cognizable prejudice when the sentencing court applied the wrong Guidelines-range but explicitly stated at sentencing "I would have imposed this same sentence as an alternate variant sentence in light of all of the 18 USC Section 3553(a) factors." *See Freeman*, 24 F.4th at 332; Joint Appendix at 142, *Freeman* Dkt. 46 (4th Cir. No. 19-4104). A District Court's *post hoc* statement that it would have imposed the same sentence does not insulate the sentence when *Strickland* prejudice is raised. *Freeman*, 24 F.4th at 332; *see also United States v. Williams*, No. 20-7402, 2023 WL 8183301, at *3 n.4 (4th Cir. Nov. 27, 2023).

Nothing in the record suggests that the District Court disregarded the Guidelines-range during sentencing. Op. Br. at 23. Instead, as is its

obligation, the Court referred to the Guidelines during the sentencing hearing and when pronouncing Mr. Powell's sentence. JA142-143; JA158.

The fact that the sentencing court granted a downward variance does not diminish the strength of this presumption of prejudice. The Supreme Court made clear that the presumption of prejudice applies "whether or not the defendant's ultimate sentence falls within the correct range." *Molina-Martinez*, 578 U.S. at 198. This is because "the Guidelines range is presumed to have an anchoring effect on sentencing decisions." *United States v. Coby*, 65 F.4th 707, 714 (4th Cir. 2023) (cleaned up). After all, "district courts not only must 'begin their analysis with the Guidelines' but must 'remain cognizant of them throughout the sentencing process.'" *Id.* (quoting *Peugh v. United States*, 569 U.S. 530, 541 (2013)). When granting a variance, the sentencing court must consider the *extent* of the deviation from the Guidelines. *Peugh,* 569 U.S. at 541–42. Therefore, "[t]hat a district court may ultimately sentence a given defendant outside the Guidelines range does not deprive the Guidelines of force as the framework for sentencing." *Id.*

Here, the District Court granted a downward variance but, in calculating the extent of the variance, the District Court relied on the incorrectly calculated Guidelines-range. The Court imposed a sentence of

16

300 months, 60 months below the minimum incorrect Guidelines-range and roughly 83% of the minimum incorrect Guidelines-range sentence. U.S.S.G., Ch. 5, Part A (Sentencing Table); JA165. If the District Court had applied the correct Guidelines-range and a similar variance, it would have sentenced Mr. Powell to a significantly shorter period of incarceration. Accounting for the same proportional variance (83%), Mr. Powell would be serving roughly 242 months. And, if the District Court were to grant the same numerical variance (60 months), Mr. Powell would only be serving a sentence of 232 months. These figures represent, respectively, a difference of 58 months or nearly 4.8 years and 68 months or over 5 and a half years. *See also Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) ("any amount of actual jail time is significant") (cleaned up).

As the Government recognized, the District Court wrestled with a variety of factors in a lengthy sentencing, including Mr. Powell's advanced age, serious physical disability, and his statement to the Court detailing the changes he has made to his life. That the Court was thoughtful in weighing the factors unique to Mr. Powell's case does not vitiate the prejudice to Mr. Powell: it underscores it. The guidelines were the originating point of, and compass throughout, sentencing. *C.f., Coby*, 65 F.4th at 714. Mr. Powell's

17

circumstances clearly weighed on the Court given its downward departure in spite of Mr. Powell's criminal history score, and the conduct raised by the Government. The prejudice is that this thoughtful process originated from the wrong point, and there is no way to know where the Court would have landed if—at the time of sentencing—it had started from the correct range.

## CONCLUSION

As Mr. Powell has demonstrated both deficient performance and prejudice, the Court should vacate his sentencing and remand this case for re-sentencing.

Dated: February 29, 2024        Respectfully submitted,

                        */s/ Morgan V. Maloney*
                        Erin B. Ashwell
                        Morgan V. Maloney
                        MCGUIREWOODS LLP
                        Gateway Plaza
                        800 East Canal Street
                        Richmond, VA 23219
                        T: (804) 775-4748
                        F: (804) 698-2148
                        eashwell@mcguirewoods.com
                        mmaloney@mcguirewoods.com

                        *Counsel for Appellant Nathaniel Powell*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,837 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced, 14-point Book Antiqua font using Microsoft Word.

*/s/ Morgan V. Maloney*
Morgan V. Maloney

**CERTIFICATE OF SERVICE**

I hereby certify that on February 29, 2024, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Morgan V. Maloney*
Morgan V. Maloney